**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PERFORMANCE SCREEN SUPPLY, LLC,<br><br>     Plaintiff,<br>v.<br><br>RYONET CORPORATION, RYAN MOOR, ABC ENTITIES I-V, and JOHN DOES I-V,<br><br>     Defendants. | Civil Action No. 22-6031 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Ryan Moor's ("Moor") Motion to Dismiss the Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6)[1]. (ECF No. 4.) Plaintiff Performance Screen Supply, LLC ("Plaintiff") opposed (ECF No. 6), and Moor replied (ECF No. 8). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, the Motion to Dismiss (ECF No. 4) is **GRANTED**.

---

[1]  Because the Court dismisses Counts Two and Three of Plaintiff's Complaint against Moor on personal jurisdiction grounds, the Court does not perform a Rule 12(b)(6) analysis.

I.   **BACKGROUND**

   **A. Factual Allegations**

Plaintiff is a custom order printing company located in Manalapan, New Jersey. (ECF No. 1-1 ¶ 1.)[2] Plaintiff sells goods and services around the world. (*Id.* at ¶ 5.) Moor formerly served as the Chief Executive Officer (CEO) and majority shareholder of the Ryonet Corporation ("Ryonet") until Moor stepped down as CEO in 2021. (*Id.* at ¶ 2; ECF No. 8-1 ¶ 7.) Ryonet, a Washington corporation, operates a similar business as Plaintiff. (*Id.*) Like Plaintiff, Ryonet also sells good and services around the world. (*Id.* at ¶ 8.)

In or around 2015, Plaintiff learned that Ryonet was allegedly using the name and likeness of Plaintiff's company name on various internet advertising websites, such as Google Adwords and Dynamic Titles. (*Id.* at ¶ 10.) Plaintiff alleges that Ryonet was using search terms such as "performance screen supply" to target New Jersey residents and caused "a significant number of [Plaintiff's] existing customers to inadvertently respond to such internet ads to do business with Ryonet instead of [Plaintiff] to the detriment of [Plaintiff]." (*Id.* at ¶ 12.) Plaintiff further alleges that Ryonet was infringing on its trade name and unfairly misappropriating its existing customers. (*Id.* at ¶ 13.) Ryonet settled with Plaintiff for $5,000.00 and agreed in part to "reverse the harm to [Plaintiff] for previous trade name infringement violations" and "not use or seek to apply" to register the phrase "performance screen supply" as Ryonet's own trademark. (*Id.* at ¶ 15 (citing ECF No. 1-1 at 12-14).)

Plaintiff alleges that in or around April 2022, it discovered that Ryonet was using Plaintiff's trade name, in violation of their settlement agreement (hereinafter "Settlement Agreement" or

---

[2]   Citations to page numbers within record documents (*i.e.*, "ECF No.") refer to the page numbers stamped on the documents by the Court's e-filing system.

"Agreement"), as Moor was allegedly using the phrases "performance screen supply" and "performance screen supplies" through internet advertising services. (*Id.* at ¶ 18.) Plaintiff further alleges that Moor has "individually conducted and authorized ... settlement agreement breaches, unfair trade practices[,] and trade infringement." (*Id.* at ¶ 20.)

### B. Procedural History

Plaintiff filed this lawsuit on September 8, 2022, in the Superior Court of New Jersey, Monmouth County, Chancery Division. *See Performance Screen Supply, LLC v. Ryonet Corporation, Ryan Moor, et al.*, Docket No. MON-C-000142-22. Plaintiff asserted four counts: breach of contract; federal unfair competition violations under 15 U.S.C. § 1125(a)); violation of the New Jersey Fair Trade Act under N.J. Stat. Ann. § 56:4-1; and common law trade infringement and unfair competition.[3] (ECF No. 1-1 at 7-8.) Defendants then removed the case to this Court on October 11, 2022. (ECF No. 1.) Moor now moves to dismiss Counts Two and Three against him under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, Rule 12(b)(6) for

---

[3] The Court does not construe "Count One" as asserting a separate cause of action, but rather as setting forth the facts common to all counts and setting forth a prayer for relief. Moor states in his moving brief that only Counts Two and Three are asserted against him individually. (*See, e.g.*, ECF No. 4-1 at 8.) Plaintiff does not appear to refute this point in its opposition, and therefore has waived its right to challenge Moor's argument. *Lawlor v. ESPN Scouts, LLC*, Civ. No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."). Although Count One is not a proper cause of action, the Court will refer to the counts as titled in the Complaint.

3

failure to state a claim. (ECF No. 4-1.)

## II. LEGAL STANDARDS AND DISCUSSION

### A. Personal Jurisdiction

The Court must first evaluate Defendant's personal jurisdiction arguments. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). "Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant." *Dzielak v. Whirlpool Corp.*, Civ. No. 12-89, 2018 WL 6985013, at *2 (D.N.J. Dec. 21, 2018), *report and recommendation adopted*, 2019 WL 145608 (D.N.J. Jan. 8, 2019).

The Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by New Jersey's long-arm statute. *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221 (D.N.J. 2020). New Jersey's long-arm statute permits the same protections afforded by the Due Process Clause under the Fourteenth Amendment of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Therefore, the Court may exercise personal jurisdiction so long as Moor maintains "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009)). "General

4

jurisdiction requires a 'rigorous' burden of proof whereby a plaintiff must show that a defendant's contacts are continuous and substantial." *Bernisky v. Baylor Trucking, Inc.*, Civ. No. 06-6246, 2007 WL 1963525, at *2 (D.N.J. June 29, 2007) (citing *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 154 (D.N.J.1990)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)

"Specific jurisdiction over a defendant exists when that defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation omitted)). "This purposeful availment requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *Burger King*, 471 U.S. at 475 (internal citations and quotations omitted). To add, "[a] specific jurisdiction analysis is claim-specific." *Vectra Visual, Inc. v. Hoving*, Civ. No. 21-03296, 2021 WL 4520339, at *5 (D.N.J. Oct. 4, 2021) (citing *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)). Moreover, for a court to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Third Circuit has established a three-part test for determining when a court can assert specific jurisdiction over a defendant. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 315 (3d Cir. 2007). First, a defendant must purposefully direct its activities at the forum. *Id.* at 317. Second, the claim must arise out of or relate to at least one of the activities mentioned under the first factor. *Id.* "In evaluating the relatedness requirement with regard to a contract claim, courts should inquire whether the defendant's contacts with the forum were instrumental in either the

formation of the contract or its breach." *Maximum Quality Foods, Inc. v. Joseph DiMaria*, Civ. No. 14-6546, 2015 WL 1865754, at *7 (D.N.J. Apr. 20, 2015).

"And, third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *See O'Connor*, 496 F.3d at 315 (internal citation omitted). "The Supreme Court has indicated that lower courts addressing the fairness question may consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Miller Yacht Sales*, 384 F.3d at 97 (citing *Burger King*, 471 U.S. at 477) (internal quotations omitted).

### 1. Count Two (Breach of Contract)

Plaintiff claims that this Court has general jurisdiction over Moor because Moor has "continually presented himself in New Jersey to promote his company's business at the annual tradeshows held in Atlantic City, New Jersey."[4] (ECF No. 6 at 1 (cleaned up).) Plaintiff further adds that Moor stays in New Jersey for at least a week every year for his tradeshow attendances. However, Plaintiff does not allege that Moor is domiciled or resides in New Jersey. *Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). To the contrary, Moor is a resident of Brush Prairie, Washington. (ECF No. 8-1 ¶ 13.) Plaintiff also fails to cite any caselaw suggesting that Moor's contacts with New Jersey are so substantial, continuous, and systematic for the Court to exercise general

---

[4] "Plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97.

jurisdiction over Moor. *See Perkins*, 342 U.S. at 446. For these reasons, the Court cannot find that it has general jurisdiction over Moor.

To add, construing Plaintiff's allegations as true, the Court does not have specific personal jurisdiction over Moor regarding the breach of contract claim against him. Specifically, Plaintiff alleges that he discovered in or around April 2022 that Ryonet was breaching the Settlement Agreement and that Moor directed Ryonet to breach the Settlement Agreement. (ECF No. 1-1 ¶ 18.)

Based on the *O'Connor* factors, the Court cannot exercise specific jurisdiction over Moor on Count Two as Count Two involves the breach of the Settlement Agreement to which Moor is not a party. *See O'Connor*, 496 F.3d 312 at 324. The Settlement Agreement is between Performance Screen Supply, LLC and Ryonet.[5] (ECF No. 1-1 at 12.) The Agreement does not mention or suggest that Plaintiff intended to bind Moor to the Agreement as an individual, nor does it mention or suggest that Moor intended to be individually liable under the Settlement Agreement. Although Moor signed the Settlement Agreement, Moor signed on behalf of Ryonet as its CEO and Ryonet was thereby bound by the Settlement Agreement. (ECF No. 1-1 at 12-14.)

Since Moor was not a party to the Settlement Agreement, the Court does not have specific jurisdiction over Moor with respect to the breach of contract claim. *Hardwick v. Consumer Guardian Specialists, LLC*, Civ. No. 20-00060, 2021 WL 1152739, at *4 (W.D. Pa. Mar. 26, 2021)

---

[5] The Court notes that "[j]urisdiction over an employee [or an officer of an organization] does not automatically follow from jurisdiction over the corporation [or entity] which employs him . . . Each defendant's contacts with the forum State must be assessed individually." *N.V.E. Inc. v. Cosm. Indus. & Trade Corp.*, Civ. No. 09-3412, 2010 WL 1381482, at *4 (D.N.J. Apr. 5, 2010) (citing *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 781 n.13 (1984)).

7

that the dispute partially arose from).[6]

Next, Plaintiff argues that the Court has personal jurisdiction over Moor because the Court should pierce the corporate veil and hold Moor individually liable for the alleged breach of the Settlement Agreement, asserting, without support or reference to the record, that "[Moor] apparently runs Ryonet himself by making all its decisions." (ECF No. 6-1 at 3-4.)

Plaintiff is correct that in limited circumstances, the Court may find personal jurisdiction over a defendant through the piercing of the corporate veil.[7] *Air Sea Int'l Forwarding*, 2008 WL 11510000, at *4 ("Where an individual or a corporation has insufficient contacts with the forum state to satisfy personal jurisdiction, a court may assert personal jurisdiction if the individual or

---

[6] Based on Plaintiff's Complaint alone, the Court does not have personal jurisdiction over Moor as to Count Two. While the Court need not rely on Moor's sworn declaration in reaching its decision, the Court notes that several of Moor's factual declarations further support the notion that the Court lacks personal jurisdiction over Moor, individually. (*See generally* ECF No. 8-1.) For example, Moor began transitioning his day-to-day management responsibilities of Ryonet to Brandon Schmunck in 2019 and then stepped down as CEO in 2021. (*Id.* at ¶ 8.) Meaning, as of April 2022, the time Plaintiff discovered the violations underlying this lawsuit, Moor was no longer the CEO of Ryonet. While Moor stills serves as the Chairman of Ryonet's Board of Directors, Ryonet has three other directors on its board. (*Id.* at ¶ 6.) The Board holds annual meetings and keeps records of the meetings. (*Id.*) Ryonet has a single shareholder, MARRS Inc., and MARRS has ten shareholders and is governed by a board of directors. (*Id.* at ¶ 4.) As of November 2022, Ryonet had 62 employees, was solvent, and maintained separate bank accounts from Moor. (*Id.* at ¶¶ 3, 9, 10.)

[7] "The sheer weight of authorities supports the theory that the laws of the state of incorporation govern whether to pierce the corporate veil." *Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, Civ. No. 03-268, 2008 WL 11510000, at *7 (D.N.J. Apr. 18, 2008), *report and recommendation adopted*, Civ. No. 03-268, 2008 WL 11509999 (D.N.J. June 3, 2008). Here, Ryonet is incorporated in Washington. To pierce the corporate veil, two requirements must be met: "First, the corporate form must be used to violate or evade a duty and second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." *Northgate Ventures LLC v. Geoffrey H. Garrett PLLC*, 10 Wash. App. 2d 850, 866 (2019) (citing *Columbia Asset Recovery Grp. LLC v. Kelly*, 177 Wash. App. 475, 486 (2013)). Moreover, "[v]eil piercing is an equitable remedy imposed to rectify an abuse of the corporate privilege." *N.W. Cascade, Inc. v. Unique Const., Inc.*, 187 Wash. App. 685, 702, (2015).

corporation are alter egos or a successor of a corporation that would be subject to personal jurisdiction before this court." (citing *In Re Nazi Era Cases Against German Defendants Litigation*, 153 Fed. Appx. 819, 825 (3d Cir. 2005))). But here, Plaintiff fails to establish with "reasonable particularity" sufficient facts as to how Moor runs Ryonet by himself and makes all of its decisions in a way that would subject Moor to a veil piercing claim. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (stating that the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction (quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987))). Plaintiff's single allegation from the Complaint alleging that "Moor has individually conducted and authorized the foregoing actions" is too conclusory to alone establish a prima facie case for personal jurisdiction. *See O'Connor v. Dodge Co., Inc*, Civ. No. 16-5177, 2016 WL 6824372, at *3 (D.N.J. Nov. 17, 2016) (rejecting a "mere conclusory statement" for establishing personal jurisdiction"). The Court notes that at the pleading stage, "[w]hile Plaintiff need not conclusively prove its position, it still must put forth sufficient facts such that it would be reasonable for this Court to exercise jurisdiction over the Defendants." *Air Sea*, 2008 WL 11510000, at *9 (finding that the court could not allow the veil piercing claim to proceed where Plaintiff failed to plead sufficient facts for the court to exercise personal jurisdiction under the claim). Here, Plaintiff fails to allege that Moor used the corporate form to violate or evade a duty. *Northgate Ventures*, 10 Wash. App. 2d at 866. Moreover, Plaintiff does not allege that Moor abused any corporate privilege. *N.W. Cascade*, 187 Wash. App. at 702. Following this, the Court finds that Plaintiff has not alleged sufficient facts to permit the Court to exercise personal jurisdiction over Moor under a veil piercing claim.

The Court's inquiry does not stop here as Plaintiff requests jurisdictional discovery on the veil piercing allegations as he alleges that Moor "regularly ignores the corporate form and treats Roynet as his own." (ECF No. 6 at 4.) "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Plaintiff bears the burden of demonstrating facts that support personal jurisdiction.") (citation omitted). "[J]urisdictional discovery is appropriate when the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Flower v. Techtronic Indus. Co.*, Civ. No 09-2736, 2011 WL 3667512, at *2 (D.N.J. Aug. 22, 2011) (internal citation and quotations omitted). "Where the defendant is an individual, the presumption in favor of discovery is reduced." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("Jurisdictional discovery generally relates to corporate defendants and the question of whether they are 'doing business' in the state.").

Courts are cautioned not to grant jurisdictional discovery when it will only serve as "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Witasick v. Estes*, Civ. No. 11-3895, 2012 WL 3075988, at *7 (D.N.J. July 30, 2012) (citing *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 Fed. Appx. 474, 478 (3d Cir. 2011)).

Here, the Court will not grant Plaintiff's passing request for jurisdictional discovery. (ECF No. 6 at 4 (stating "[f]urther discovery will likely demonstrate as well that [Defendant] regularly ignores the corporate form and treats Ryonet as his own.").) Plaintiff's allegation that Defendant ignores the corporate form, which Plaintiff raises for the first time outside of the Complaint but provides no facts in support, is mere speculation and thus does not warrant discovery. *See Seafood*

*Co. v. Holt Cargo Sys., Inc.*, Civ. No. 96-5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (denying jurisdictional discovery because plaintiff only presented speculative reasons why the court should discuss jurisdictional discovery); *Witasick*, 2012 WL 3075988, at *7 (denying jurisdictional discovery because the plaintiff's request for jurisdictional discovery was frivolous); *Reading v. Sandals Resorts Int'l, Ltd.*, Civ. No. 06-3511, 2007 WL 952031, at *4 (D.N.J. Mar. 28, 2007) (denying request for jurisdictional discovery as frivolous because the plaintiff failed to rebut the defendant's assertion that he had no connection to New Jersey); *Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 584 (D.N.J. 2015) (denying jurisdictional discovery due to "absence of any factual allegations that would support personal jurisdiction."); *Rose v. Granite City Police Dep't*, 813 F. Supp. 319, 321 (E.D. Pa. 1993) ("The Court chooses to exercise its discretion here and deny Plaintiff's motion requesting discovery because Plaintiff has failed to make even a threshold prima facie showing that the Court has jurisdiction over . . . Defendants.")

Moreover, as is the situation here, the presumption in favor of jurisdictional discovery is reduced when the defendant is an individual and not a corporation. *See Massachusetts Sch. of L. at Andover, Inc*, 107 F.3d at 1042. For these reasons, the Court denies Plaintiff's request for jurisdictional discovery.

### 2. Unfair Competition (Count Three)

The Court must also dismiss Count Three for unfair competition as against Moor for lack of personal jurisdiction.

As noted above, "jurisdiction over an employee [or an officer of an organization] does not automatically follow from jurisdiction over the corporation [or entity] which employs [them.]" *Hardwick*, 2021 WL 1152739, at *5 (citation omitted). Therefore, to determine whether the Court has personal jurisdiction over Moor on Count Three, the Court must determine whether Moor has

11

sufficient minimum contacts with New Jersey in his personal capacity. *Id.* Additionally, because Plaintiff argues that the Court has personal jurisdiction over Moor due to his status as the former CEO of Ryonet, the Court must evaluate whether Moor's acts in his official capacity as CEO of Ryonet created sufficient contacts with New Jersey. *Id.*

The Court finds that Plaintiff fails to allege that Moor has sufficient contacts with New Jersey on a personal level or in an official capacity as the former CEO of Ryonet. Plaintiff alleges that the Court has jurisdiction over Moor because he regularly conducts business in New Jersey and because Defendant used to annually attend a tradeshow in Atlantic City, New Jersey, from 2012 to 2019. (ECF Nos. 1-1 ¶ 3; 6-1 ¶ 9.) However, Plaintiff fails to allege that the unfair competition claim has any connection to Moor's attendance at the annual Atlantic City trade show from 2012 to 2019. In fact, Plaintiff claims that the wrongful conduct was discovered "in or about April 2022," nearly three years after Moor last attended a tradeshow in New Jersey. (ECF No. 1-1 ¶ 18.) Other than the conclusory allegation that: "[Moor] . . . individually conducted and authorized the foregoing actions that constitute ... unfair trade practices" (ECF No. 1-1 ¶ 20), Plaintiff fails to plead any basis, much less than with reasonable particularity, that the Court has personal jurisdiction over Moor as applied to the unfair competition claim. *Mellon Bank*, 960 F.2d at 1223. Therefore, the Court dismisses Count Three as against Moor for lack of personal jurisdiction.

### III.   CONCLUSION

For the foregoing reasons, and other good cause shown, Moor's Motion to Dismiss (ECF No. 4) is **GRANTED** and Counts Two and Three as against Moor are dismissed without prejudice. An appropriate Order follows.

Dated July 31, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE